# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ASIA THOMAS,                :
      **Plaintiff,**          :

                        :

    **v.**                   :       **CIVIL ACTION NO. 26-CV-2276**

                        :

THE CITY OF PHILADELPHIA, *et al.*,  :
      **Defendants.**        :

## MEMORANDUM

**PEREZ, J.**                                 **JULY 10 , 2026**

Plaintiff Asia Thomas filed this *pro se* civil rights action against the City of Philadelphia ("the City"), the City's Office of Homeless Services ("OHS"), the non-profit Resources for Human Development, Inc. ("RDH") and one of its program directors, alleging federal and state law violations.  She also seeks leave to proceed *in forma pauperis*.[1]  (*See* ECF No. 1.)  For the following reasons, the Court will grant Thomas leave to proceed *in forma pauperis* and dismiss the case.

---

[1] Thomas initially filed only a Motion for Leave to Proceed *In Forma Pauperis* without an accompanying complaint, so the Clerk of Court opened the case as a civil matter with an "In re" caption.  Thomas's two filings on April 24, 2026, were termed "Complaint" (ECF No. 3) and "Amended Complaint" (ECF No. 4) on the docket, but the first filing appears to be just the first three pages of the second filing.  On June 8, 2026, Thomas filed another version (ECF No. 9), which the Court will construe as Thomas's Amended Complaint, *see* Federal Rule of Civil Procedure 15(a)(1).  It serves as the governing pleading in the case and is the operative pleading the Court has screened under 28 U.S.C. § 1915(e)(2)(B).  *See Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 35 (2025) ("If a plaintiff amends her complaint, the new pleading 'supersedes' the old one: The 'original pleading no longer performs any function in the case.'" (citation omitted)); *see also Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019) ("In general, an amended pleading supersedes the original pleading and renders the original pleading a nullity.  Thus, the most recently filed amended complaint becomes the operative pleading.") (internal citations omitted).

I.      FACTUAL ALLEGATIONS[2]

In her Amended Complaint, Thomas provides numerous conclusory statements but only a few allegations of fact with respect to particular defendants.  She claims that, from approximately May 29, 2024, through June 2026, the Defendants and others employed in the agencies apparently dealing with homeless persons "collude[d] and conspire[d] together" to violate her rights by subjecting her "to continuous and ongoing fear, intimidation, threat, unfair treatment, discrimination, retaliation, excessive force and false arrest."  (Am. Compl. at 4.) Thomas contends that the Defendants repeatedly put her health and safety at risk, failed to provide timely, adequate nutrition, and misrepresented themselves during court proceedings. (*Id.*)  She states that she was subjected to hazardous living conditions that resulted in the transmission of disease, which requires "ongoing medical attention and treatment."  (*Id.*)

Thomas alleges that Defendant Stephanie Collins, Program Director of RHD Fernwood East, "knew or should have known" that cameras with video and audio were mounted on Thomas's room door frame and across the hall to allegedly record inside Thomas's bedroom and bathroom.  (*Id.* at 3, 4, 5.)  Privacy curtains were apparently removed from Thomas's sleeping area, and Thomas was forced to have her bedroom door open at all times without exception, even though Collins apparently knew of "inappropriate behavior from [the] male staff toward [Thomas]."  (*Id.* at 5.)  Her bedroom windows were drilled shut. (*Id.*)  Collins had doorknobs and locks removed from the female bathroom/shower room doors, and staff would enter without knocking.  (*Id.*)  Thomas was threatened with discharge and refused further housing assistance,

---

[2] The factual allegations in this Memorandum are taken from Thomas's Amended Complaint ("Am. Compl.") (ECF No. 9), consisting of a form complaint available for use by unrepresented litigants.  The Court adopts the sequential pagination assigned by the CM/ECF docketing system.

and she was not permitted to make a record of the alleged events. (*Id*.) Thomas alleges that her mail and packages were tampered with and that she could not file complaints with RHD when it blocked her email address. (*Id*.)

Thomas brings her Amended Complaint under 42 U.S.C. § 1983 and names the City, OHS, RHD, and Stephanie Collins as Defendants.[3] (*Id*. at 2-3.) Among the laws she claims were violated, she lists the First, Fourth, Eighth, and Fourteenth Amendments, the Fair Housing Act ("FHA), Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act ("RA"), 18 U.S.C. §§ 241 & 242, the Food and Nutrition Act, the Privacy Act, and the Public Health Service Act, plus several state laws. (*Id*. at 3.) Thomas alleges that she experienced "emotional distress, mental anguish, pain and suffering, humiliation, embarrassment, physical

---

[3] Thomas named other Defendants in her initial Complaint (ECF No. 4), including the Department of Human Services Bureau of Hearings and Appeals, the Philadelphia Police Department, and Doe Defendants, but she did not include them in her Amended Complaint (ECF No. 9). The Court cannot look to the original Complaint "to help fill the factual void in [the plaintiff's] amended complaint." *March v. Dep't of Defense*, No. 25-1650, 2025 WL 2417754, at *1 (3d Cir. Aug. 21, 2025) (*per curiam*) (citing *Royal Canin U.S.A.*, 604 U.S. at 35). *see also Argentina v. Gillette*, 778 F. App'x 173, 175 n.3 (3d Cir. 2019) (explaining that "liberal construction of a *pro se* amended complaint does not mean accumulating allegations from superseded pleadings").

In the Amended Complaint, Thomas references "Philadelphia police officers" once in the section on the form, apparently to allege that all Defendants are state actors, and claims that they "used threats, excessive force, physical assault and battery to place [her] under false arrest in conspiracy with" Collins, RHD, and OHS. (Am. Compl. at 4.) However, she does not name any police officers as defendants, even as "John Does." To the extent she again intended to include the Philadelphia Police Department as a named defendant, a police department is a sub-unit of the local government and, as such, is merely a vehicle through which the municipality fulfills its policing functions. *See e.g. Johnson v. City of Erie*, 834 F. Supp. 873, 878-79 (W.D. Pa. 1993). Thus, while a municipality may be liable under § 1983, a police department, as a mere sub-unit of the municipality, may not. *Id.*; *Martin v. Red Lion Police Dept.*, 146 F. App'x. 558, 562 n.3 (3d Cir. 2005) (*per curiam*) (stating that police department is not a proper defendant in an action pursuant to 42 U.S.C. § 1983 because it is a sub-division of its municipality). To the extent that Thomas has attempted to include the Philadelphia Police Department as a Defendant, it is not a proper defendant and is dismissed.

3

discomfort, violations and deprivations of [her] right to due process," "hunger, anxiety, and depression," plus "Constitutional pain and loss of enjoyment."  (*Id*. at 5.)  She requests injunctive relief, declaratory judgment, and monetary damages.[4] (*Id*.)

## II.    STANDARD OF REVIEW

Because Thomas does not appear able to pay the filing fee, the Court will grant her leave to proceed *in forma pauperis*.  Under 28 U.S.C. § 1915(e)(2)(B)(ii), the Court must dismiss the Amended Complaint if it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether a complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 560 U.S. 544, 556 (2007)).  At this early stage of the litigation, the Court will accept the facts alleged in the *pro se* complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether the complaint contains facts sufficient to state a plausible claim.  *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v.*

---

[4] Declaratory relief is unavailable to adjudicate past conduct, so Thomas's request for this relief is improper.  *See Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) (*per curiam*) ("Declaratory judgment is inappropriate solely to adjudicate past conduct" and is also not "meant simply to proclaim that one party is liable to another."); *see also Andela v. Admin. Office of U.S. Courts*, 569 F. App'x 80, 83 (3d Cir. 2014) (*per curiam*) ("Declaratory judgments are meant to define the legal rights and obligations of the parties in the anticipation of some future conduct."). A declaratory judgment is also not "meant simply to proclaim that one party is liable to another." *Corliss*, 200 F. App'x at 84 (*per curiam*); *see also Taggart v. Saltz*, 855 F. App'x 812, 815 (3d Cir. 2021) (*per curiam*) ("A declaratory judgment is available to define the legal rights of the parties, not to adjudicate past conduct where there is no threat of continuing harm.").  The Court will therefore dismiss Thomas's request for declaratory relief.

*Hollingsworth*, 115 F.4th 197 (3d Cir. 2024).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.  As Thomas is proceeding *pro se*, the Court construes her allegations liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

Furthermore, the Court must dismiss the Amended Complaint if it lacks subject matter jurisdiction.  *See* Fed. R. Civ. P. 12(h)(3); *see also Grp. Against Smog and Pollution, Inc. v. Shenango, Inc.*, 810 F.3d 116, 122 n.6 (3d Cir. 2016) (explaining that "an objection to subject matter jurisdiction may be raised at any time [and] a court may raise jurisdictional issues *sua sponte*").  A plaintiff commencing an action in federal court bears the burden of establishing federal jurisdiction.  *See Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) ("The burden of establishing federal jurisdiction rests with the party asserting its existence." (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006))).  "Jurisdictional [issues] . . . may be raised at any time and courts have a duty to consider them *sua sponte*."  *Wilkins v. United States*, 598 U.S. 152, 157 (2023) (internal quotations omitted).

## III.   DISCUSSION

### A.   Federal Claims

#### 1.   Claims under Section 1983

Thomas asserts constitutional claims pursuant to § 1983, the vehicle by which federal constitutional claims may be brought in federal court.  (Am. Compl. at 3.)  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).

##### a.   *Monell* Claims Against the City and OHS

As an agency of the City, the OHS is not a separate legal entity for the purposes of §

1983, and claims alleged against it cannot proceed. *See Lewis v. DMH Invs. LLC*, No. 22-3207,

2023 WL 2163901, at *1 n.1 (E.D. Pa. Feb. 22, 2023) (noting that OHS is a City agency and

"does not have a separate legal existence from the City" and treating claims against OHS as

claims against the City); *see also OVA 467 v. City of Philadelphia*, No. 22-2450, 2022 WL

3970633, at *3 (E.D. Pa. Aug. 31, 2022) ("City agencies are not suable entities under § 1983

because they do not have a separate legal existence."); *Vurimindi v. City of Philadelphia*, No. 10-

88, 2010 WL 3169610, at *1 (E.D. Pa. Aug. 10, 2010) (holding that under 53 Pa. Cons. Stat. §

16257, "no such department shall be taken to have had . . . a separate corporate existence, and

hereafter all suits growing out of their transaction . . . shall be in the name of the City of

Philadelphia"). Accordingly, OHS will be terminated as a defendant.

To state a municipal liability claim against the City of Philadelphia, a plaintiff must

allege that the City's policies or customs caused the alleged constitutional violation. *See Monell

v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978); *Natale v. Camden Cnty. Corr. Facility*,

318 F.3d 575, 583-84 (3d Cir. 2003). The plaintiff "must identify [the] custom or policy, and

specify what exactly that custom or policy was" to satisfy the pleading standard. *McTernan v.

City of York,* 564 F.3d 636, 658 (3d Cir. 2009). "Policy is made when a decisionmaker

possess[ing] final authority to establish municipal policy with respect to the action issues an

official proclamation, policy, or edict." *Est. of Roman v. City of Newark*, 914 F.3d 789, 798 (3d

Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)).

"Custom, on the other hand, can be proven by showing that a given course of conduct, although

not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to

constitute law." *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)). "[I]t is

not necessary for a plaintiff to establish affirmative acts: 'deliberate indifference, lack of compliance and failure to adhere to . . .  standards' may also constitute custom." *Swainson v. City of Philadelphia*, No. 22-2163, 2023 WL 144283, at *5 (E.D. Pa. Jan. 10, 2023) (quoting *A v. Nutter*, 737 F. Supp. 2d 341, 362 (E.D. Pa. 2010)).  "A plaintiff must also allege that the policy or custom was the 'proximate cause' of his injuries." *Est. of Roman*, 914 F.3d at 798 (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996)).  This can be done "by demonstrating an 'affirmative link' between the policy or custom and the particular constitutional violation" alleged. *Id.*

Thomas has not identified any municipal policy or custom that caused her alleged injuries, but lists a variety of vague and confusingly-phrased "wrongs" allegedly committed against her personally.  For example, in one of the few references to OHS or the City, she asserts: "I have personally experienced and witnessed actions that have compromised my health, safety, and dignity.  Management failures and safety concerns at [ ] all federally funded emergency housing providers in The City of Philadelphia with OHS as the oversight agency are as outlined below and based on documented complaints and personal experience which reveal neglect, unsafe conditions, and violations of basic human rights which contribute to an environment that proved to be detrimental to my health safety, dignity and quality of life."  (Am. Compl. at 5.)  Thomas's allegations not only lack any plausible factual details but are exclusively rooted in her own personal experience.  A policy allegation based solely on a plaintiff's own personal experiences does not state a plausible *Monell* claim.  *See Phillips v. Northampton County,* 687 F. App'x 129, 132 (3d Cir. 2017) (*per curiam*) (affirming dismissal of municipal liability claims where complaint contained "wholly conclusory and highly generalized assertions about unspecified patterns of misconduct" based on "no facts to support the existence of any

policy, custom, or practice beyond those involving [the plaintiff's] own [experiences]."); *see also Fowler v. City of New York*, No. 13-2372, 2019 WL 1368994, at *15 (E.D.N.Y. Mar. 26, 2019) ("Because plaintiff's alleged constitutional violations concern only himself, coupled with the limited number of alleged violations he brings, as a matter of law he cannot establish a finding of widespread practice supporting a custom or usage theory under *Monell*."). Accordingly, all constitutional claims alleged against the City and OHS are dismissed without prejudice for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

### b. Claims Against RHD and Collins

RHU is a nonprofit organization[5] and, according to Thomas's Amended Complaint, Collins is the Program Director of the RHD Fernwood East. (Am. Compl. at 2-4.) Whether a private entity is acting under color of state law—i.e., whether the defendant is a state actor—depends on whether there is "such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005) (internal quotations omitted). "To answer that question, [the United States Court of Appeals for the Third Circuit has] outlined three broad tests generated by Supreme Court jurisprudence to determine whether state action exists: (1) whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state; (2) whether the private party has acted with the help of or in concert with state officials; and (3) whether the state has so far insinuated itself into a position of interdependence with the acting

---

[5] *See* https://www.rhd.org/about-us/ (stating that "Resources for Human Development is a national human services nonprofit") (last visited Jul. 6, 2026); https://www.rhd.org/how-we-work/government-agencies/ (explaining how RHD partners with state and local governments to deliver services) (last visited Jul. 6, 2026). *See also Brown v. Res. for Hum. Dev.*, No. 21-1735, 2021 WL 2400616, at *4 (E.D. Pa. June 11, 2021) (holding that RHD was not a state actor for § 1983 purposes).

party that it must be recognized as a joint participant in the challenged activity." *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (internal quotations and alteration omitted).

In response to the prompt on the court's complaint form asking how each defendant acted under color of state law, Thomas states that Collins "used her power, authority, and policy" as Program Director to violate Thomas's rights." (Am. Compl. at 4.)  However, this statement does not address how a nonprofit like RHD and its employee, Collins, acted under color of state law in relation to any alleged constitutional violation related to her housing. (*Id*.)  Privately run social services entities operating housing programs and homeless shelters, as well as their employees, have been generally regarded as non-state actors for the purposes of § 1983.  *See Brown v. Res. for Hum. Dev.*, No. 21-1735, 2021 WL 2400616, at *5 (E.D. Pa. June 11, 2021) (concluding that plaintiff did not plausibly allege that RHD or its employees were state actors, and collecting cases); *see also Bell v. SELF Inc.*, No. 23-3646, 2023 WL 7004419, at *3 (E.D. Pa. Oct. 24, 2023) ("[A]ny constitutional claims cannot proceed because the named Defendants – a private non-profit organization and its emergency housing site – are not state actors subject to suit under § 1983."); *White v. Pagotto*, No. 22-3257, 2023 WL 4929306, at *2 (3d Cir. Aug. 2, 2023) (*per curiam*) (affirming the dismissal of § 1983 claims where plaintiff "made no allegations showing that the named defendant, Bethesda Project, Inc., [the manager of a government subsidized housing program where plaintiff lived] is a state actor").  Moreover, Thomas's allegation that RHD and its associated programs including Fernwood East receive federal financial assistance does not render them or their employees state actors, because state action is not plausibly alleged merely on the basis that a private individual or entity receives government funding.[6]  *See Chance*

---

[6] To the extent that Thomas contends that Collins and/or RHD "conspired" with police to perpetuate an arrest based on false grounds, (*see* Am. Compl. at 4), this alleged activity does not render Collins or RHD state actors for purposes of § 1983.  *See Yoast v. Pottstown Borough*, 437

*v. Reed*, 538 F. Supp. 2d 500, 507 (D. Conn. 2008) (holding mere fact that Operation Hope, a nonprofit organization that provides emergency shelter and services to the homeless, receives federal and state funding and is organized as a § 503(c)(3) nonprofit organization under the Internal Revenue Code, does not make it a state actor); *see also Klavan v. Crozer-Chester Med. Ctr.*, 60 F. Supp. 2d 436, 443 (E.D. Pa. 1999) ("[D]efendants' receipt of government funding, even if combined with [extensive regulation], does not render defendants state actors, regardless of which test we employ."). Thomas's constitutional claims against RHD and Collins will be dismissed with prejudice.

### 2. Federal Statutory Claims

Thomas includes a "laundry list" of various federal statutory provisions she claims were violated by the Defendants' actions. (Am. Compl. at 3 (listing "18 USC §241 §242 [,] Public Health Service Act Section 361 (42 U.S.C. § 264), USC Title 42 Chapter 21 . . . Privacy Act 5 USC §552, . . . Fair Housing Act, Americans with Disabilities Act, Section 504 Rehabilitation Act, Food & Nutrition Act.").)[7] However, she fails to state a plausible claim under any federal statute.

### a. Criminal Statutes

---

F. Supp. 3d 403, 420 (E.D. Pa. 2020) ("Providing false information to the police—even deliberately—does not transform a private party into a state actor."), *aff'd*, No. 22-1960, 2023 WL 4418213 (3d Cir. July 10, 2023); *Collins v. Christie*, No. 06-4702, 2007 WL 2407105, at *4 (E.D. Pa. Aug. 22, 2007) ("[E]ven if Dr. Columbo intentionally provided the false information to the police, the plaintiff would still fail to state a claim under § 1983.").

[7] Thomas also lists "USC Title 42 Chapter 21," which generally references the chapter for civil rights, and contains multiple sections and subsections. Thomas appears to proceed more specifically under § 1983 of that chapter because she has claimed certain constitutional rights were violated.

Thomas cites to 18 U.S.C. §§ 241, 242, which are criminal provisions related to conspiracies against rights of citizens and deprivations of rights under color of law. Criminal statutes generally do not give rise to a basis for civil liability, however. *See Brown v. City of Phila. Office of Hum. Res.*, 735 F. App'x 55, 56 (3d Cir. 2018) (*per curiam*) ("Brown alleges that the defendants violated various criminal statutes, but most do not provide a private cause of action."); *Davis v. Sarles*, 134 F. Supp. 3d 223, 228 (D.D.C. 2015) (concluding that §§ 241 and 242 do not provide for a private cause of action). The United States Supreme Court has stated that, unless specifically provided for, federal criminal statutes rarely create private rights of action. *Nashville Milk Co. v. Carnation Co.*, 355 U.S. 373, 377 (1958) (stating that where a statute "contains only penal sanctions for violation of it provisions; in the absence of a clear expression of congressional intent to the contrary, these sanctions should under familiar principles be considered exclusive, rather than supplemented by civil sanctions of a distinct statute"); *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 190 (1994) ("We have been quite reluctant to infer a private right of action from a criminal prohibition alone."). Accordingly, the claims asserted under criminal statutes will be dismissed with prejudice.

### b. Civil Statutes

Thomas fails to state a cause of action under any of the civil statutes she cites in her Amended Complaint. First, she lists a half dozen federal civil statutes that she claims were violated by Defendants, but she does not state anywhere in her Amended Complaint *how* those provisions apply to her case. Passing references to legal provisions are ordinarily insufficient to bring a plausible claim before the Court. *See Higgins v. Bayada Home Health Care Inc.*, 62 F.4th 755, 763 (3d Cir. 2023) ("A passing reference to an issue will not suffice to bring that issue

11

before this court.") (cleaned up) (quoting *Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994)).  Relatedly, while the Court liberally construes a pro se plaintiff's complaint and "appl[ies] the relevant legal principle even when the complaint has failed to name it," a pro se plaintiff must "still must allege sufficient facts in their complaints to support a claim."  *Vogt*, 8 F.4th at 185 (quoting *Mala*, 704 F.3d at 245).  The Court is thus not expected to identify every potential legal theory that might be supported by the alleged facts.  *Doe v. Allegheny Cnty. Hous. Auth.*, No. 23-1105, 2024 WL 379959, at *3 (3d Cir. Feb. 1, 2024) (*per curiam*) ("While a court must liberally construe the allegations and 'apply the applicable law, irrespective of whether the pro se litigant mentioned it b[y] name,' *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002), this does not require the court to act as an advocate to identify any possible claim that the facts alleged could potentially support.").

### i. Food and Nutrition Act of 2008, Privacy Act, and Public Health Service Act Claims

Thomas references the Food and Nutrition Act of 2008, which established the Supplemental Nutrition Assistance Program (SNAP) for low-income families.  (*See* Am. Compl. at 3); 7 U.S.C. § 2011, *et seq.*  She appears to contend that Collins, RHD, and OHS conspired with apparent organizations or agencies not parties to this action to deny her timely benefits for which she qualified.  (Am. Compl. at 4.)  To the extent that she is seeking to obtain benefits or appeal a decision from the denial of benefits, she must seek that particular relief by exhausting the appropriate administrative remedies available to her.  *See Pella v. Atl. Cnty. Dep't of Fam. & Cmty. Dev.*, No. 25-13268, 2026 WL 522655, at *9 (D.N.J. Feb. 25, 2026) (citing *McCarthy v. Madigan*, 503 U.S. 140, 144-45 (1992) ("This Court long has acknowledged the general rule that parties exhaust prescribed administrative remedies before seeking relief from federal courts.") *superseded by statute on other grounds as noted in Booth v. Churner*, 532 U.S. 731, 732 (2001)).

12

"Federal law requires that someone dissatisfied with a SNAP eligibility determination be afforded notice and an opportunity for a fair hearing," and Pennsylvania statutes provide for that accordingly.  *Id*. (citing 7 U.S.C. § 2020(e)(10) (providing for a "fair hearing and a prompt determination thereafter to any household aggrieved by the action of the State agency under any provision of its plan of operation as it affects the participation of such household in the supplemental nutrition assistance program"); *see also* 55 Pa. Admin. Code § 275.1 (providing SNAP recipient the right to appeal and fair hearing).  Thomas does not allege here that she has not been afforded notice and opportunity for a hearing.  To the extent she is dissatisfied after the administrative process, her recourse is to seek relief in the state court.  *See Lanauze v. Dep't of Pub. Welfare*, No. 442 C.D. 2011, 2012 WL 8677902, at 2 n.3 (Pa. Commw. Ct. Mar. 5, 2012) (explaining that "a party aggrieved by a Bureau order has four options: (1) do nothing; (2) appeal that order to this Court within 30 days; (3) seek reconsideration from the Secretary within 15 days; *or* (4) seek reconsideration from the Secretary within 15 days *and* appeal the final order to this Court within 30 days.  Those seeking review of the merits of an adjudication of the Bureau must file a petition for review with this Court." (citations omitted)).  To the extent Thomas intends to challenge the denial or curtailment of benefits, her claims are dismissed with prejudice for failure to state a claim.

Thomas's claim against the named Defendants under the Privacy Act, 5 U.S.C. § 552, also cannot proceed.  That Act is intended "'to protect the privacy of individuals identified in federal information systems,'" and 'addresses the government's retention and disclosure of personal information' while allowing 'individuals to seek a court order to correct its records.'" *Doe #1 v. Noem*, 781 F. Supp. 3d 246, 264 (D.N.J. 2025).  The Privacy Act applies to federal agencies and there is no private cause of action under the Act against a municipal or state

agency. *N'Jai v. Pittsburgh Bd. of Pub. Educ.*, 487 F. App'x 735, 737 (3d Cir. 2012) (citing

*Pennyfeather v. Tessler*, 431 F.3d 54, 56 & n. 1 (2d Cir.2005). Courts have concluded that the

Privacy Act also does not apply to individuals, even if that individual is an employee of a federal

agency. *Petrus v. Bowen*, 833 F.2d 581, 582 (5th Cir. 1987) ("Neither the Freedom of

Information Act nor the Privacy Act creates a cause of action for a suit against an individual

employee of a federal agency."); *Walsh v. Krantz*, No. 07-0616, 2008 WL 2329130, at *5 (M.D.

Pa. June 4, 2008), *aff'd*, 386 F. App'x 334 (3d Cir. 2010) ("The court agrees with its sister courts

in the Western District of Pennsylvania and the District of New Jersey that a Privacy Act claim

cannot be brought against an individual or a state or local agency") (citing *Fetzer v. Cambria

County Human Servs.,* 384 F. Supp. 2d 813, 816 (W.D. Pa. 2005); *Cummings v. Malone,* No. 06-

5442, 2006 WL 3694592, at *3 (D.N.J. Dec.12, 2006)). Thomas's Privacy Act claim will

accordingly be dismissed with prejudice.

Thomas lists the Public Health Service Act ("PHSA") as a basis for her action, (*see* Am.

Compl. at 3). The PHSA governs varied health areas that include national research institutes,

substance abuse and mental health services administration, modernization of hospitals, safety of

public water systems, health information, research for particular diseases, bioethics, population

research and family planning, vaccine safety, and data collection. *See generally* 42 U.S.C. Ch.

6A. Thomas asserts a violation of 42 U.S.C. § 264 under the PHSA, which provides for the

administration of government efforts to combat and control communicable disease. It provides

for "[p]romulgation and enforcement by Surgeon General," and authorizes "[t]he Surgeon

General, with the approval of the Administrator [Secretary], . . . to make and enforce such

regulations as in his judgment are necessary to prevent the introduction, transmission, or spread

of communicable diseases from foreign countries into the States or possessions, or from one

14

State or possession into any other State or possession. For purposes of carrying out and enforcing such regulations, the Surgeon General may provide for such inspection, fumigation, disinfection, sanitation, pest extermination, destruction of animals or articles found to be so infected or contaminated as to be sources of dangerous infection to human beings, and other measures, as in his judgment may be necessary." *Id*. Section 264 does not by its own terms provide for a private cause of action, and the Court has found no case law providing that § 264 creates a private cause of action. *See Young v. Iolab Corp.*, No. 93-0847, 1993 WL 95491, at *1 (E.D. Pa. Apr. 2, 1993) (stating that the Public Health Service Act expressly provides for a private cause of action for violation of only certain of its provisions). The Court will dismiss her § 264 claim with prejudice.

### ii.    FHA, ADA, and RA Claims

Thomas fails to allege any plausible facts in support of the claims made under the FHA, ADA, and RA. Those statutes prohibit discrimination against a party with protected status—race, color, religion, sex, familial status, national origin, or disability—as under the FHA (and amended by the Fair Housing Amendments Act of 1988 ("FHAA")), or against a qualified individual with a disability, as under the ADA and RA. There is nothing in Thomas's Amended Complaint that reaches beyond the singular reference to these statutes that indicates the FHA, ADA, RA apply.[8] Most glaringly, Thomas has not alleged any facts that she is a "qualified

---

[8] Under the FHA discrimination on the basis of race, color, religion, sex, familial status, or national origin, is prohibited in a variety of real estate-related transactions. *See* 42 U.S.C. § 3604. The FHA's prohibition of discrimination "can be violated by either intentional discrimination or if a practice has a disparate impact on a protected class." *White v. Barbe*, 767 F. App'x 332, 334 (3d Cir. 2019) (*per curiam*) (citing *Mt. Holly Gardens Citizens in Action, Inc. v. Township of Mount Holly*, 658 F.3d 375, 381 (3d Cir. 2011)); *see also El v. People's Emergency Ctr.*, 438 F. Supp. 3d 283, 289-90 (E.D. Pa. 2020). Additionally, "[i]n 1988, Congress extended the Fair Housing Act to protect against discrimination on the basis of disability." *Revock v. Cowpet Bay W. Condo. Ass'n*, 853 F.3d 96, 104 (3d Cir. 2017) (citing *City*

individual with a disability," which is necessary under the ADA and RA. *Bittenbender v. Fam. Serv. Ass'n of Bucks Cnty.*, No. 25-5920, 2026 WL 561128, at *8 (E.D. Pa. Feb. 26, 2026). Likewise, she has not averred that she is a member of a protected class under the FHA, or that she is an individual with disabilities pursuant to the FHAA. *Id.* at *5. It follows that there are no facts in the Amended Complaint suggesting that Defendants discriminated against her on the basis of race, color, religion, sex, familial status, national origin, or disability. Without these basic elements, Thomas's claims under the discrimination statutes must be dismissed.

---

*of Edmonds v. Oxford House, Inc.*, 514 U.S. 725, 728 n.1 (1995); Fair Housing Amendments Act of 1988, Pub. L. No. 100-430, 102 Stat. 1619 (1988)).

Title II of the ADA and the RA require public entities to provide, in all of their programs, services, and activities, a reasonable accommodation to qualified individuals with disabilities. *Furgess v. Pa. Dep't of Corr.*, 933 F.3d 285, 288-89 (3d Cir. 2019). "[W]hen a plaintiff sues under both the RA and the ADA, [courts] often address both claims in the same breath, construing the provisions of both statutes in light of their close similarity of language and purpose," since "the scope of protection afforded under both statutes, *i.e.*, the general prohibition against discrimination, is materially the same." *Berardelli v. Allied Servs. Inst. of Rehab. Med.*, 900 F.3d 104, 117 (3d Cir. 2018) (internal quotations, citations, and alterations omitted). To state a plausible claim under either the ADA or the RA, a plaintiff "must allege that he is a qualified individual with a disability, who was precluded from participating in a program, service, or activity, or otherwise was subject to discrimination, by reason of his disability." *Furgess*, 933 F.3d at 288-89. The plaintiff "must also [allege] intentional discrimination under a deliberate indifference standard [if] he seeks compensatory damages." *Id.* at 289 (footnote omitted). A plaintiff may meet that standard in two ways: "first, by alleging facts suggesting that the existing policies caused a failure to adequately respond to a pattern of past occurrences of injuries like the plaintiffs, or, second, by alleging facts indicating that [he] could prove that the risk of cognizable harm was so great and so obvious that the risk and the failure to respond will alone support finding deliberate indifference." *Haberle v. Troxell*, 885 F.3d 170, 181 (3d Cir. 2018) (internal quotations and alterations omitted).

Title III of the ADA prohibits places of public accommodation from discriminating against individuals with disabilities in connection with goods, services, facilities, privileges, advantages or accommodations. 42 U.S.C. § 12182(a). However, only injunctive relief is available to a private plaintiff suing under Title III of the ADA, meaning monetary relief is not available. 42 U.S.C. § 12188(a); *Bowers v. Nat'l Collegiate Athletic Ass'nNCAA*, 346 F.3d 402, 433 (3d Cir. 2003) ("Title III defendants cannot be liable for money damages."); *see also Abadi v. Target Corp.*, No. 23-1050, 2023 WL 4045373, at *2 (3d Cir. June 16, 2023) ("Title III of the ADA, which prohibits discrimination on the basis of disability in public accommodations, only provides for injunctive relief." (citing, *inter alia*, *Bowers*, 346 F.3d at 433)).

In addition, the Court will dismiss the RA and ADA claims against Collins and the ADA Title II claim against RHD for other reasons. Neither the ADA nor the RA governs the conduct of individuals sued in their personal capacities, like Collins. *See Montanez v. Price*, 154 F.4th 127, 145 (3d Cir. 2025) (stating that individuals are not subject to suit in their personal capacities under Title II of the ADA); *A.W. v. Jersey City Pub. Sch.*, 486 F.3d 791, 804 (3d Cir. 2007) (explaining that lawsuits under the RA may not be brought against individuals, but against recipients of federal assistance). Further, RHD is not subject to Title II of the ADA because it is a private entity. *See* 42 U.S.C. § 12131(1) (defining a "public entity" as: "(A) any State or local government; (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and (C) any department, agency, special purpose district, or other instrumentality of a State or States or local government."). The allegation that RHD "receives state and federal funding" does not suffice to plausibly allege that it is an "instrumentality of a State or States or local government." § 12131(1)(B); *Montanez*, 154 F.4th at 145 (*"Even though Wellpath contracts with the Commonwealth to perform a traditional government function—providing medical services to state prisoners—that alone is not enough to transform a private corporation into an "instrumentality of a State."*) (citing cases); *People's Emergency Ctr.*, 315 F. Supp. 3d at 843-44 (dismissing Title II ADA claim for plaintiff's failure to allege discrimination by a public entity); *Zemater v. Pub. Action to Deliver Shelter Inc.*, No. 22-6712, 2024 WL 3694524, at *2 (N.D. Ill. Aug. 7, 2024) ("[T]here are no allegations that Hesed House is an instrumentality of a state or local government that would qualify as a public entity for purposes of Title II of the ADA, the IHRA, and the Rehabilitation Act."). The ADA and RA claims alleged against Collins in her individual capacity and RHD will be dismissed with prejudice. *Bittenbender*, 2026 WL 561128, at *10 (dismissing FHA, ADA, and RA claims

with prejudice when amendment would be futile).  The remaining FHA, ADA, and RA claims will be dismissed without prejudice.[9]

B.      State Law Claims

Because her federal claims will be dismissed, the Court will not exercise supplemental jurisdiction under 28 U.S.C. § 1367(c) over Thomas's remaining claims brought under state law.[10]  Accordingly, the only independent basis for jurisdiction over any such claims is 28 U.S.C. § 1332(a), which grants a district court jurisdiction over a case in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."  Section 1332(a) requires "'complete diversity between all plaintiffs and all defendants,' even though only minimal diversity is constitutionally required. This means that, unless there is some other basis for jurisdiction, 'no plaintiff [may] be a citizen of the same state as any defendant.'"  *Lincoln Benefit Life Co.,* 800 F.3d at 104 (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) and *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010) (internal footnotes omitted)).  As stated, the plaintiff has the burden of pleading the existence of the court's jurisdiction, *see* Fed. R. Civ. P. 8, and 'in a diversity action, the plaintiff must state all parties' citizenships such that the existence of complete diversity can be confirmed."  *Craven v. Leach*, 647 F. App'x 72, 75 (3d Cir. 2016) (quoting *Chem. Leaman*

---

[9] A homeless shelter can be a place of public accommodation under Title III. 42 U.S.C.A. § 12181 (7)(K) (listing homeless shelter); Owens v. Our Bros.' Place, No. 26-2486, 2026 WL 1382201, at *3 (E.D. Pa. May 18, 2026) ("Public accommodations include homeless shelters and other 'social service center establishment[s].' See 42 U.S.C. § 12181(7)(K).").  Accordingly, the claim alleged against RHD under Title III is dismissed without prejudice.

[10] Thomas asserts claims under the Pennsylvania Human Relations Act, the Wiretapping and Electronic Surveillance Control Act, and the Emergency Housing Protection Act.  (Am. Compl. at 3.)  The Court also construes "Disease Prevention and Control Act" to refer to the Pennsylvania Disease Prevention and Control Law of 1955, 35 Pa. Cons. Stat. § 521.1 *et seq*. To the extent that an invasion of privacy tort claim could be construed, the Court lacks subject matter jurisdiction over that state law claim also.

*Tank Lines, Inc. v. Aetna Cas. & Sur. Co.,* 177 F.3d 210, 222 n.13 (3d Cir. 1999)).

An individual is a citizen of the state where she is domiciled, meaning the state where she is physically present and intends to remain. *See Washington v. Hovensa LLC*, 652 F.3d 340, 344 (3d Cir. 2011). Residence alone is insufficient to establish domicile. *Krasnov v. Dinan*, 465 F.2d 1298, 1300 (3d Cir. 1972) ("The fact of residency must be coupled with a finding of intent to remain indefinitely."). Rather, "domicile is established by an objective physical presence in the state or territory coupled with a subjective intention to remain there indefinitely." *Hovensa LLC*, 652 F.3d at 344.

Thomas has not met her burden. She asserts she is a citizen of Pennsylvania and resides in Philadelphia. (*See* Am. Compl. at 2.) Although she does not allege the state citizenship for all Defendants, she provides Philadelphia, Pennsylvania, addresses for all Defendants. (*Id*. at 2-3.) Because it appears that at least one—and likely all—Defendants are citizens of Pennsylvania, diversity jurisdiction does not exist over any state law claims. Accordingly, all state law claims will be dismissed without prejudice for lack of subject matter jurisdiction.

## IV.    CONCLUSION

For the foregoing reasons, the Court will dismiss Thomas's Amended Complaint. Thomas's federal constitutional claims asserted pursuant to 42 U.S.C. § 1983 alleged against Defendants OHS, Stephanie Collins, and Resources for Human Development will be dismissed with prejudice for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). The Americans with Disabilities Act and Section 504 of the Rehabilitation Act claims alleged against Collins and the Title II of the Americans with Disabilities Act claim against RHD will be dismissed with prejudice for failure to state a claim. Thomas's claims under 18 U.S.C. §§ 241, 242, the Public

19

Health Service Act, the Food and Nutrition Act of 2008, and the Privacy Act will be dismissed with prejudice for failure to state a claim under § 1915(e)(2)(B)(ii).

The *Monell* claims against the City, and the remaining claims alleged under the Fair Housing Act, Americans with Disability Act, and Section 504 of the Rehabilitation Act will be dismissed without prejudice for failure to state a claim.  Leave to amend those claims is granted. Thomas's state law claims will be dismissed without prejudice for lack of subject matter jurisdiction.

Thomas may file a second amended complaint as to the claims dismissed without prejudice, where leave to amend has been given.  In any second amended complaint, Thomas may use the civil complaint form, but no matter what the format, she should present all facts to support her claims in a narrative statement in numbered paragraphs as required by the Federal Rule of Civil Procedure 10.[11]  In addition, although the Court may *consider* exhibits attached to a complaint in conducting statutory screening, a plaintiff may not state a claim by relying solely on exhibits.  *See Harris v. U.S. Marshal Serv.*, No. 10-328, 2011 WL 3607833, at *2 (W.D. Pa. Apr. 6, 2011), *report and recommendation adopted as modified*, 2011 WL 3625136 (W.D. Pa. Aug. 15, 2011); *see also Estate of Egenious Coles v. Zucker, Goldberg & Ackerman*, 658 F. App'x 108, 111 (3d Cir. 2016) ("[W]e cannot fault the District Court for failing to intuit the necessary factual allegations from one of the many exhibits appended to the complaint.").  In

---

[11] Thomas is also reminded of the requirements of Rule 8.  In her Amended Complaint, Thomas has provided few concrete facts in support of her claims, and offers primarily conclusory statements, which do not suffice to state a plausible claim.  For example, she asserted the following as "facts": "[t]he defendants repeatedly and intentionally put my health and safety at risk, [and] failed to provide adequate nutrition in a timely manner," and that Defendants "used punitive tactics to force me into unsafe and hazardous living conditions which allowed for the preventable spread and transmission of communicable disease, sickness and re infection requiring ongoing medical treatment."  (Am. Compl. at 4.)  These vague statements are conclusions, not facts providing the necessary context and basis for a plausible legal claim.

other words, Thomas may attach exhibits to any second amended complaint, but must describe

all facts that support her claims in a narrative format for those claims to be plausible.  An

appropriate order containing additional information regarding amendment follows.

BY THE COURT:

HON. MIA R. PEREZ