**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ASIA THOMAS,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 26-CV-2276** |
| | : | |
| **THE CITY OF PHILADELPHIA, *et al.*,** | : | |
| **Defendants.** | : | |

## MEMORANDUM

**PEREZ, J.** **OCTOBER 16, 2026**

Plaintiff Asia Thomas filed this *pro se* civil rights action against the City of Philadelphia ("the City"), the City's Office of Homeless Services ("OHS"), the non-profit Resources for Human Development, Inc. ("RDH") and one of its program directors, alleging federal and state law violations. (*See* ECF Nos. 3, 9.) On July 10, 2026, the Court granted Thomas leave to proceed *in forma pauperis* and dismissed her Complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and for lack of subject matter jurisdiction. *See Thomas v. City of Philadelphia*, No. 26-2276 (E.D. Pa. Jul. 10, 2026). Thomas was given leave to amend certain claims that were dismissed without prejudice. *Id.* She filed a "Motion for Leave to File a Supplemental Pleading Pursuant to Fed. R. Civ. P. 15(d) and Emergency Request for a Temporary Restraining Order," as well as a Second Amended Complaint and Supplements. (ECF Nos. 44, 45, 46, 47, 48.) For the following reasons, the Court will grant the Motion for Leave to File a Supplement in part, deny it in part, and dismiss the Second Amended Complaint. The Request for a Temporary Restraining Order will be denied as moot.

## I. FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY[1]

Thomas's Second Amended Complaint restates her claims that, from late 2024 through January 2026, the Defendants and others employed in the agencies apparently dealing with homeless persons "collude[d] and conspire[d] together" to violate her rights by subjecting her "to continuous and ongoing fear, intimidation, threat, unfair treatment, discrimination, retaliation, excessive force and false arrest." (SAC at 4.) Thomas contends in mostly conclusory fashion that the Defendants repeatedly put her health and safety at risk, failed to provide timely, adequate nutrition, and misrepresented themselves during court proceedings. (*Id.*) She states that she was subjected to hazardous living conditions that resulted in the transmission of disease, which requires "ongoing medical attention and treatment." (*Id.*)

Thomas asserts that Defendant Stephanie Collins, Program Director of RHD Fernwood East, "failed to prevent dangerous and hazardous environments which compromised [her] health and safety." (ECF No. 46 at 2; SAC at 3.) Collins allegedly permitted windows at the shelter to be drilled shut, restricting air flow, sunlight, and creating a fire trap. (ECF No. 46 at 2.) She had employees block an exit from the dining room under the guise of a shelter in place, allegedly instructed an employee named Courtney to seal windows so that Thomas could not see out or get out of the dining area, and told another employee named Darius to use his body and foot to prevent her from leaving the dining area. (*Id.*) Fernwood's program manager Ashley Taylor denied her laundry services. (*Id.*) When housekeeping disposed some of Thomas's food, Taylor reportedly said that Thomas could dig her food out of the trash if she wanted, and Thomas did so

[1] The factual allegations in this Memorandum are taken from Thomas's Second Amended Complaint ("SAC") (ECF No. 45), and Thomas's "Supplement" submitted the same day as her Second Amended Complaint on August 10, 2026 (ECF No. 44). Any references to the record will follow the sequential pagination assigned by the CM/ECF docketing system.

while upset in front of other residents and employees. (*Id*.) Courtney and another employee routinely entered her bedroom and threw away unopened and sealed food and other items. (*Id.*) Thomas alleges that, under Collins's direction, employees used intimidation and threats of discharge and coercive control to deny due process and liberty of self-nourishment. (*Id*. at 2.) When Thomas would question the action taken by staff, they answered that it was "Stephanie['s] decision" and "[t]ake it up with her." (*Id.* at 2-3.) She permitted a male employee named Mike to pay unwanted attention to Thomas from late summer 2024 through 2025. (*Id*. at 3.) Upon Thomas's return to Fernwood on January 15, 2026 after being away, Collins instructed security to call the police, but security refused. (*Id*.) Collins initially would not allow Thomas to pick up her belongings, and the urn of her beloved dog's ashes was never recovered. (*Id*.)

Thomas states that, on January 6, 2026, she was illegally evicted from her residence at Fernwood where she had been residing for almost two years. (*Id*. at 5.) Thomas suffered a severe anxiety attack and had to call an ambulance when Collins and police officers who were present refused to do so. (*Id*.) Collins had been recording the incident on her phone but had to stop because of the anxiety attack. (*Id.)* Collins and officers allegedly whispered in the hallway, with one police officer taking a call and stating, "you need to tell me to trespass her if you want me to force her to leave." (*Id*.) Four police officers, who had purportedly been threatening to use a taser on Thomas, then surrounded her after she "refused to willingly leave the building without a court order signed by a judge as required by directive 3.17 of the police commissioner and Philadelphia Code 9-1600 PROHIBITION AGAINST UNLAWFUL EVICTION PRACTICES." (*Id*.) The officers allegedly pulled her hair and dragged from her bed by her feet to the hallway where a stretcher was waiting. (*Id.* at 6.) An African American officer put Thomas in a chokehold and a Caucasian officer twisted her arm and bent it. (*Id*.) She was

placed on a stretcher waiting in the hallway, where an officer told an emergency responder to hold Thomas down while he "chained" her to the stretcher with handcuffs, which the responder did despite Thomas's protestations not to be touched. (*Id.*) Thomas told the officer she needed her purse and phone, and Collins retrieved the correct purse from Thomas's room even though there were several in her closet. (*Id.*) Officers allegedly looked through her belongings without her consent, and they failed to intervene with the purportedly illegal eviction. (*Id.*) Thomas was hospitalized and received inpatient treatment and therapy from January 6-15, 2026. (*Id.*)

On January 15, 2026, she was informed that she had been placed on extended restriction by RHD and could not receive further services until February 7, 2026. (*Id*. at 7.) She was sent to other shelters. (*Id.*) She had been documented in the system as "being violent," and attempted to appeal the discharge and denial of services. (*Id*. at 10.) Thomas was eventually assigned to Eliza Shirley House. (*Id.* at 9.)

Thomas claims that the City of Philadelphia funded the mounting of cameras on her bedroom door frame and the hallway bathrooms and shower rooms, which allegedly provided Collins with unrestricted access. (*Id.* at 4.) Thomas believes Collins could monitor her movement throughout the building and had the capability to listen to personal and business phone calls. (*Id.*) The City also ignored her complaints about lack of hot water, safe drinking water, electricity, central air or heat, and valid permits for food preparation and service. (*Id.*) Thomas suffered stomach sickness, chills and night sweats. (*Id.*) The City allegedly failed to train the shelter employees on OHS manuals and operations, protocols and policies related to housing standards, safety codes, and rights of residents. (*Id.*) She also contends that the City further failed to train officers, and their actions purportedly constituted deliberate indifference.

(*Id*. at 5.) Thomas claims that she has been "maliciously targeted and sabotaged" by employees and agents of the City. (*Id*. at 16.)

Thomas initiated this matter in April 2026. (ECF Nos. 1, 3.) She then amended her Complaint and alleged claims against the City, OHD, RHD, and Stephanie Collins for violations of the First, Fourth, Eighth, and Fourteenth Amendments, the Fair Housing Act ("FHA"), Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act ("RA"), 18 U.S.C. §§ 241 & 242, the Food and Nutrition Act, the Privacy Act, and the Public Health Service Act, plus several state laws. (ECF No. 9 at 3.) After the Court granted her motion to proceed *in forma pauperis*, it dismissed the claims in her Amended Complaint (ECF No. 9) in part with prejudice and in part without prejudice, and gave her leave to amend certain claims that were not dismissed without prejudice.[2] *Thomas*, 2026 WL 1999554, at *9. She subsequently submitted numerous emergency motions, petitions, and exhibits, which the Court has denied. (*See* Orders entered on July 31, 2026 (ECF No. 32) and August 4, 2026 (ECF No. 43).)

Thomas subsequently filed a "Motion for Leave to File a Supplemental Pleading Pursuant to Fed. R. Civ. P. 15(d) and Emergency Request for a Temporary Restraining Order" (ECF No. 44), and a Second Amended Complaint (ECF No. 45). In the "Motion for Leave," Thomas asked to include three additional incidents that are "inextricably linked to the ongoing pattern of constitutional violations, retaliation, and deprivation of rights by the Defendants and associated third parties." (ECF No. 44 at 3.) First, she recounted an "intimidation incident" at a 7 Eleven on April 14, 2026, in which she observed that a uniformed, unidentified police officer in line

[2] Notably, the Court dismissed OHS as a party and dismissed all federal claims alleged against Collins with prejudice except for the FHA claim. *Thomas*, 2026 WL 1999554, at *9. In addition, the only claims against RHD not dismissed with prejudice were the FHA and an ADA claim (which the Court will liberally construe under Title III). *Id.*

ahead of her had a piece of tape stuck to the butt of his service weapon that had the name "Thomas" written on it. (*Id.* at 2.) Thomas asserts that this situation was "not [an] isolated incident[]," and "[t]he intimidation by the uniformed officer in April is a direct retaliatory response to Plaintiff[']s active litigation." (*Id*. at 3.) Next, Thomas states that, in July 2026, the County Assistance Office ("CAO") wrongfully delayed and denied her SNAP benefits, and that "[t]his denial represents a deprivation of a recognized property interest under the Fourteenth Amendment" and evidences "systemic retaliation" against her. (*Id.*) Thomas has applied to the CAO since March 2025, and she has allegedly experienced: someone fraudulently identifying themselves as a representative of CAO at a SNAP hearing, changing docket numbers being announced, *ex parte* communications of the ALJ and a residential manager, denial of SNAP for lack of photo ID (which had apparently been stolen), failure to comply with federal requirements, and administrative confusion over whether her SNAP card had been mailed to her. (ECF No. 46 at 14-16.) CAO workers instructed that Thomas needed to sign a "1902 form," and Thomas informed them they were making the requirement up.[3] (*Id.* at 15-16.)

The third event that Thomas seeks to add is an alleged August 2026 assault by her roommate at the Eliza Shirley House, Tiffany Lomax. (ECF No. 44 at 3.) Thomas states that she had previously requested a transfer to a different room at the shelter because of an "escalating situation" with the roommate, to no avail. (*Id*.) Thomas states that Lomax "weaponized a pillow" on the early morning of August 3 after Thomas responded, "make me" to the roommate's threat to "shut the f—up". She called police, who responded hours later and did

[3] Prior to her Motion for Leave to Supplement in this action, Thomas filed a separate civil action against the County Assistance Office and others on July 22, 2026, apparently concerning the denial of her SNAP benefits. *Thomas v. City of Philadelphia County Assistance Office*, No. 26-5133 (E.D. Pa.).

not provide an incident report or allow her to press charges. (ECF No. 46 at 13.) Thomas later witnessed the officer laughing with the roommate and an Eliza Shirley House employee, before allegedly screaming at Thomas that she needed mental help and accusing her of making up the allegations.[4] (*Id.*)

As to the Second Amended Complaint she filed, Thomas again names the City, RHD, and Stephanie Collins as Defendants. (SAC at 2-3.) She repeats many of the same allegations verbatim from her Amended Complaint and has re-alleged several claims that the Court has already dismissed with prejudice. (*See* SAC at 3; ECF No. 9 at 3.) She raises claims previously dismissed without prejudice alleging municipal liability and violations of the FHA, the ADA, and the Pennsylvania Emergency Housing Protection Act. (*Id*. at 3.) The Court will also construe the Second Amended Complaint as alleging claims of false arrest and excessive force against four Philadelphia Police Officers, and a state tort law claim of assault against her roommate, Lomax. Thomas again alleges that she experienced "emotional distress, mental anguish, pain and suffering, humiliation, embarrassment, physical discomfort, violations and deprivations of [her] right to due process," "hunger, anxiety, and depression," plus "Constitutional pain and loss of enjoyment and quality of life" (*Id*. at 5.) She requests injunctive

[4] Thomas filed three "Supplements" after she filed her motion, but the Court will only consider the one she filed on the same day as her Second Amended Complaint (ECF No. 46) as the operative supplement. Parties cannot plead their cases by filing documents in a piecemeal fashion. *See Argentina v. Gillette*, 778 F. App'x 173, 175 n.3 (3d Cir. 2019) (explaining that "liberal construction of a *pro se* amended complaint does not mean accumulating allegations from superseded pleadings"); *Bryant v. Raddad*, No. 21-1116, 2021 WL 2577061, at *2 (E.D. Pa. June 22, 2021) ("Allowing a plaintiff to file partial amendments or fragmented supplements to the operative pleading, 'presents an undue risk of piecemeal litigation that precludes orderly resolution of cognizable claims.'" (quoting *Uribe v. Taylor*, No. 10-2615, 2011 WL 1670233, at *1 (E.D. Cal. May 2, 2011)).

relief to have the police officers fired and have policies adopted, declaratory relief that her rights were violated, and monetary damages.[5] (*Id.*)

## II. STANDARD OF REVIEW

Under 28 U.S.C. § 1915(e)(2)(B)(ii), the Court must dismiss Thomas's Second Amended Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether a complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 560 U.S. 544, 556 (2007)).

At this early stage of the litigation, the Court will accept the facts alleged in the *pro se* Second Amended Complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether the Second Amended Complaint contains facts sufficient to state a plausible claim. *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. As Thomas is proceeding *pro se*, the Court

---

[5] Declaratory relief is unavailable to adjudicate past conduct, so the request for this type of relief, (SAC at 5), must be dismissed. *See Corliss v. O' Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) (*per curiam*) ("Declaratory judgment is inappropriate solely to adjudicate past conduct" and is also not "meant simply to proclaim that one party is liable to another."); *see also Andela v. Admin. Office of U.S. Courts*, 569 F. App' x 80, 83 (3d Cir. 2014) (*per curiam*) ("Declaratory judgments are meant to define the legal rights and obligations of the parties in the anticipation of some future conduct."). Moreover, to the extent that she seeks to have the four police officers terminated from their positions, the Court is not empowered to grant such relief as a remedy under § 1983. *Hill v. Liberman*, No. 25-5678, 2025 WL 3515443, at *3 (E.D. Pa. Dec. 8, 2025) ("[T]o the extent that [Plaintiff] wants the police officers and judge to be terminated from their employment, the Court has no authority to order such relief in a Section 1983 civil rights case.") (citing *Hall v. Carny*, No. 22-4094, 2023 WL 187569, at *1 n.3 (E.D. Pa. Jan 13, 2023) (dismissing with prejudice request that defendant's employment be terminated)).

construes her allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). While the Court "appl[ies] the relevant legal principle even when the complaint has failed to name it," a pro se plaintiff must "still must allege sufficient facts in their complaints to support a claim." *Vogt*, 8 F.4th at 185 (quoting *Mala*, 704 F.3d at 245). The Court is thus not expected to identify every potential legal theory that might be supported by the alleged facts. *Doe v. Allegheny Cnty. Hous. Auth.*, No. 23-1105, 2024 WL 379959, at *3 (3d Cir. Feb. 1, 2024) (*per curiam*) ("While a court must liberally construe the allegations and 'apply the applicable law, irrespective of whether the pro se litigant mentioned it b[y] name,' *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002), this does not require the court to act as an advocate to identify any possible claim that the facts alleged could potentially support.").

Furthermore, the Court must dismiss the Second Amended Complaint if it lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3); *see also Grp. Against Smog & Pollution, Inc. v. Shenango, Inc.*, 810 F.3d 116, 122 n.6 (3d Cir. 2016) (explaining that "an objection to subject matter jurisdiction may be raised at any time [and] a court may raise jurisdictional issues *sua sponte*"). A plaintiff commencing an action in federal court bears the burden of establishing federal jurisdiction. *See Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) ("The burden of establishing federal jurisdiction rests with the party asserting its existence." (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006))). "Jurisdictional [issues] . . . may be raised at any time and courts have a duty to consider them *sua sponte*." *Wilkins v. United States*, 598 U.S. 152, 157 (2023) (internal quotations omitted).

## III. DISCUSSION

### A. Motion For Leave to File Supplement

Pursuant to Federal Rule of Civil Procedure 15(d), "[o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented. The court may permit supplementation even though the original pleading is defective in stating a claim or defense." Thomas has asked to supplement her pleading to add three events. (ECF No. 44.) The Court will add two: the 7 Eleven "incident" and the interaction with her roommate Lomax. Thomas's request to add the circumstances and claims concerning the denial of SNAP benefits will be denied as duplicative of the action she filed before the August 7 motion in this case. Thomas had already filed a separate civil action in this Court against the County Assistance Office and others on July 22, 2026, apparently concerning the denial of her SNAP benefits. *See Thomas v. City of Philadelphia County Assistance Office*, No. 26-5133 (E.D. Pa.). The Court will thus grant the motion in part and deny it in part.

### B. Federal Claims

#### 1. Previously Dismissed Federal Claims

In her Second Amended Compliant, Thomas cites to a veritable "laundry list" of federal constitutional provisions, statutes, and state laws. Many of these claims have already been dismissed with prejudice in the Court's prior ruling. In particular, all federal constitutional claims against Collins and RHD, claims under the Public Health Service Act, Privacy Act, Food and Nutrition Act, and ADA and RA claims against Collins have been dismissed with prejudice. *Thomas*, 2026 WL 1999554, at *9. The Court will accordingly review the claims re-alleging *Monell* liability against the City and violations of FHA against the Defendants. It will also

construe Thomas's ADA claim raised in her Second Amended Complaint as alleged against RHD under the provision of Title III.

### 2. § 1983 Claims

The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983. "Section 1983 provides a civil remedy for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws.'" *Halsey v. Pfeiffer,* 750 F.3d 273, 290 (3d Cir. 2014) (quoting 42 U.S.C. § 1983); *see also Elmore v. Cleary*, 399 F.3d 279, 281 (3d Cir. 2005) (explaining § 1983 "is not itself a source of substantive rights, but [rather] a method for vindicating federal rights elsewhere conferred." (quoting *Baker v. McCollan,* 443 U.S. 137, 145 n. 3 (1979))). To state a claim under § 1983, a plaintiff must demonstrate "that the defendants, acting under color of law, violated the plaintiff's federal constitutional or statutory rights, and thereby caused the complained of injury." *Karns v. Shanahan,* 879 F.3d 504, 520 (3d Cir. 2018) (quoting *Elmore,* 399 F.3d at 281).

#### a. Fourth Amendment Claims Against Police Officers

The Court understands Thomas to allege that four police officers who were present when she was evicted from Fernwood falsely arrested her and used excessive force.[6] (SAC at 4.) As to the false arrest claim, she cannot state a plausible basis for such a claim since she does not allege that she was arrested in the first place. "To bring a claim for false arrest, [a plaintiff] must establish (1) that there was an arrest; and (2) that the arrest was made without probable cause."

[6] In her Supplement, Thomas has raised an interaction with other police officers on August 3, 2026, but she has not alleged that there were any constitutionally actionable interactions on that day. (ECF No. 46 at 13.) Likewise, the supposed "incident" in a 7 Eleven raises no plausible claims, and, in any event, insofar as Thomas makes an inference that intimidation was afoot, that conclusion is implausible from the allegations. (ECF No. 44 at 2-3.)

*Harvard v. Cesnalis*, 973 F.3d 190, 199 (3d Cir. 2020) (quotations and citation omitted). Thomas has not alleged that she was arrested, and her claim therefore fails and will be dismissed.

With respect to the excessive force allegation, the claim is not plausible under the facts that Thomas has alleged. A claim of excessive force during a seizure or detention is governed by the Fourth Amendment. *See Albright v. Oliver*, 510 U.S. 266, 274 (1994) ("The Framers considered the matter of pretrial deprivations of liberty and drafted the Fourth Amendment to address it."). "[C]laims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard[.]" *Graham v. Connor*, 490 U.S. 386, 395 (1989); *see also Santini v. Fuentes*, 795 F.3d 410, 417 (3d Cir. 2015) ("In an excessive force case, we determine whether a constitutional violation has occurred using the Fourth Amendment's objective reasonableness test."). Objective reasonableness is evaluated under the "totality of the circumstances" and "from the perspective of the officer at the time of the incident" without "the benefit of hindsight." *Brown v. Upper Darby Police Dep't*, No. 20-1452, 2021 WL 2948833, at *3 (3d Cir. July 14, 2021) (*per curiam*) (quoting *Santini*, 795 F.3d 410, 417 (3d Cir. 2015)).

Thomas admits that, on January 6, 2026, she was at the emergency homeless shelter and refused to leave without a signed order from a judge. (ECF No. 46 at 6.) Considering the totality of the circumstances from the perspective of the responding officers, it must first be considered that persons residing in a transitional homeless shelter do not qualify as tenants under state law and therefore they are not entitled to the same rights.[7] *Dantley v. Bethesda Project,*

[7] "Without a lease, neither party's status as landlord or tenant can be created and no legal rights can accrue under landlord-tenant law." *Bittenbender v. Fam. Servs. Ass'n of Bucks Cnty.*, No. 25-5920, 2026 WL 561128, at *4 n.5 (E.D. Pa. Feb. 26, 2026) (quoting *Penn Warehousing*

*Our Brother's Place*, No. 26-1008, 2026 WL 824052, at *3 (E.D. Pa. Mar. 25, 2026) (citing *Thomas v. Cohen*, 453 F.3d 657, 663 (6th Cir. 2006) (holding that plaintiffs evicted from a transitional homeless shelter did not qualify as tenants under state law and lacked a protected property interest under the Fourteenth Amendment)). Accordingly, she has not alleged that she had a valid reason to refuse a request to leave. When she did so, the officers used force to remove her including twisting her arm, pulling her hair, placing her in a chokehold, and dragging her off of a bed and into a hallway to be placed on a stretcher. (ECF No. 46 at 6.)

But "[n]ot every push or shove, even if it may later seem unnecessary . . . violates the Fourth Amendment." *Graham v. Connor*, 490 U.S. 386, 396 (1989). "Pushes and shoves, like other police conduct, must be judged under the Fourth Amendment standard of reasonableness." *Saucier v. Katz*, 533 U.S. 194, 209 (2001). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97. Under the facts and circumstances Thomas has alleged, it was reasonable for officers to momentarily grab and subdue her to secure her on the gurney in order to remove her from the premises involuntarily when she refused their order to leave. *See Kalfus v. N. Y. Presbyterian Hospital*, 476 F. App'x 877, 880–81 (2d Cir. 2012) (explaining that police officers' pushing trespasser onto the ground while arresting him to remove him from the premises after he refused to leave was reasonable force); *Pesola v. City of New York*, 2016 WL 1267797 at * 7 (S.D.N.Y. March 30, 2016) (granting motion to dismiss when arrestee alleged only minimal force when police pushed him in

---

*& Distribution, Inc. v. SS United States Conservancy*, No. 22-2285, 2024 WL 3015307, at *4 (E.D. Pa. June 14, 2024)).

opposite directions, threw him into the ground face first, and twisted his arm behind his back and arrestee did not allege any resulting injuries). The claim for excessive force will be dismissed for failure to state a claim.

**b. *Monell* Claim**

To state a municipal liability claim against the City of Philadelphia, a plaintiff must allege that the City's policies or customs caused the alleged constitutional violation. *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978); *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003). The plaintiff "must identify [the] custom or policy, and specify what exactly that custom or policy was" to satisfy the pleading standard. *McTernan v. City of York,* 564 F.3d 636, 658 (3d Cir. 2009). "Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." *Est. of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). "Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)). "[I]t is not necessary for a plaintiff to establish affirmative acts: 'deliberate indifference, lack of compliance and failure to adhere to . . . standards' may also constitute custom." *Swainson v. City of Philadelphia*, No. 22-2163, 2023 WL 144283, at *5 (E.D. Pa. Jan. 10, 2023) (quoting *A v. Nutter*, 737 F. Supp. 2d 341, 362 (E.D. Pa. 2010)). "A plaintiff must also allege that the policy or custom was the 'proximate cause' of his injuries." *Est. of Roman*, 914 F.3d at 798 (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996)). This can be done "by demonstrating an

'affirmative link' between the policy or custom and the particular constitutional violation" alleged. *Id.*

A plaintiff may state a basis for municipal liability by "alleging failure-to-supervise, train, or discipline . . . [and alleging facts showing] that said failure amounts to deliberate indifference to the constitutional rights of those affected." *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019). "This consists of a showing as to whether (1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Id.* In this context, the plaintiff must allege that the inadequacy in the training actually caused the constitutional violation at issue. *City of Canton*, 489 U.S. at 388; *Carson*, 2024 WL 3792223, at *7. Usually, "a pattern of similar constitutional violations by untrained employees is necessary to demonstrate deliberate indifference for purposes of failure to train." *Thomas v. Cumberland County*, 749 F.3d 217, 223 (3d Cir. 2014) (citation omitted).

The Second Amended Complaint includes allegations that the City funded the installation of cameras in the shelter, and that it ignored Thomas's complaints about a lack of hot water, safe drinking water, electricity, central air or heat, and valid permits for food preparation and service. (SAC at 2-3.) However, Thomas once again has not identified any municipal policy or custom by the City that has caused her to suffer a constitutional violation. To the extent that she has related personal experiences, that, alone, is insufficient to plausibly allege a municipality's policy or custom. *See Phillips v. Northampton County,* 687 F. App'x 129, 132 (3d Cir. 2017) (*per curiam*) (affirming dismissal of municipal liability claims where complaint contained "wholly conclusory and highly generalized assertions about unspecified patterns of misconduct"

based on "no facts to support the existence of any policy, custom, or practice beyond those involving [the plaintiff's] own [experiences]."); *see also Fowler v. City of New York*, No. 13-2372, 2019 WL 1368994, at *15 (E.D.N.Y. Mar. 26, 2019) ("Because plaintiff's alleged constitutional violations concern only himself, coupled with the limited number of alleged violations he brings, as a matter of law he cannot establish a finding of widespread practice supporting a custom or usage theory under *Monell*.").

Thomas's contention that the City has "failed to train" shelter workers does not state a plausible claim because nowhere in the Second Amended Complaint does Thomas even allege that employees of RHD or the shelters she has visited are employed by the City. RHD is a nonprofit organization, not a City agency.[8] In addition, Thomas's allegation that the City failed to train police officers does not state a plausible *Monell* claim, because "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for . . . failure to train," and Thomas has not plausibly alleged such a pattern. *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 409 (1997)). She relates two interactions with police in her Second Amended Complaint, and that is not sufficient to state a pattern of conduct as a predicate for a *Monell* claim. *Guzman v. City of Newark*, No. 20-6276, 2022 WL 1044957, at *9 (D.N.J. Apr. 7, 2022) (dismissing *Monell* claim where two instances of alleged wrongful initiation of criminal proceedings pleaded by plaintiff did not give rise to plausible claim of policy or

[8] *See* https://www.rhd.org/about-us/ (stating that "Resources for Human Development is a national human services nonprofit") (last visited Oct. 14, 2026); https://www.rhd.org/how-we-work/government-agencies/ (explaining how RHD partners with state and local governments to deliver services) (last visited Jul. 6, 2026). *See also Brown v. Res. for Hum. Dev.*, No. 21-1735, 2021 WL 2400616, at *4 (E.D. Pa. June 11, 2021) (holding that RHD was not a state actor for § 1983 purposes).

custom). Finally, "[i]t is well-settled that, if there is no violation in the first place, there can be no derivative municipal claim." *See Mulholland v. Gov't Cnty. of Berks, Pa.*, 706 F.3d 227, 238 n.15 (3d Cir. 2013) (citing *Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (if a municipal employee "inflicted no constitutional injury . . ., it is inconceivable that [the municipality] could be liable")). Accordingly, the *Monell* claim alleged against the City will be dismissed for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

### 3. FHA Claim Against Defendants; Title III of the ADA Against RHD

Thomas re-alleges the claim that the Defendants violated her rights under the FHA, and she again references the ADA among the claims raised in her Second Amended Complaint.[9] Beyond those references, she fails to plead any additional facts to make these clams plausible. The ADA and FHA prohibit discrimination against a party with protected status—race, color, religion, sex, familial status, national origin, or disability—as under the FHA (and amended by the Fair Housing Amendments Act of 1988 ("FHAA"))—or against a qualified individual with a disability, as under the ADA.[10]

---

[9] Although Thomas does not mention Title III specifically, the Court will liberally construe her ADA claim under that provision as it is alleged against a homeless shelter. *See* 42 U.S.C.A. § 12181 (7)(K) (listing homeless shelter).

[10] Under the FHA, discrimination on the basis of race, color, religion, sex, familial status, or national origin, is prohibited in a variety of real estate-related transactions. *See* 42 U.S.C. § 3604. The FHA's prohibition of discrimination "can be violated by either intentional discrimination or if a practice has a disparate impact on a protected class." *White v. Barbe*, 767 F. App'x 332, 334 (3d Cir. 2019) (*per curiam*) (citing *Mt. Holly Gardens Citizens in Action, Inc. v. Township of Mount Holly*, 658 F.3d 375, 381 (3d Cir. 2011)); *see also El v. People's Emergency Ctr.*, 438 F. Supp. 3d 283, 289-90 (E.D. Pa. 2020). Additionally, "[i]n 1988, Congress extended the Fair Housing Act to protect against discrimination on the basis of disability." *Revock v. Cowpet Bay W. Condo. Ass'n*, 853 F.3d 96, 104 (3d Cir. 2017) (citing *City of Edmonds v. Oxford House, Inc.*, 514 U.S. 725, 728 n.1 (1995); Fair Housing Amendments Act of 1988, Pub. L. No. 100-430, 102 Stat. 1619 (1988)).

To state a claim under Title III, a plaintiff must plausibly allege that: (1) she has a disability; (2) the defendant is a public accommodation within the meaning of the statute; and (3)

A homeless shelter, such as Fernwood, can be a place of public accommodation under Title III. 42 U.S.C.A. § 12181 (7)(K) (listing homeless shelter); *Owens v. Our Bros.' Place*, No. 26-2486, 2026 WL 1382201, at *3 (E.D. Pa. May 18, 2026) ("Public accommodations include homeless shelters and other 'social service center establishment[s].' See 42 U.S.C. § 12181(7)(K)."). Yet once again, Thomas has not alleged any facts that she is a "qualified individual with a disability," which is necessary to state a plausible ADA claim. *Bittenbender v. Fam. Serv. Ass'n of Bucks Cnty.*, No. 25-5920, 2026 WL 561128, at *8 (E.D. Pa. Feb. 26, 2026) (citing first *Hartman v. Bank of New York Mellon*, 650 F. App'x 89, 92 (3d Cir. 2016) (*per curiam*) (summarily affirming dismissal of disability discrimination claims where allegations were "entirely conclusory"); then citing *Evans v. President of Thomas Jefferson Univ. Hosp.*, No. 22-1371, 2022 WL 2916685, at *5 (E.D. Pa. July 25, 2022) (dismissing complaint where plaintiff did "not allege whether or how his alleged disability impacts his daily living, and his conclusory allegations that he was subject to discrimination because of his disability are not sufficient to state a plausible claim"); and then citing *Karipidis v. ACE Gaming LLC*, No. 09-3321, 2010 WL 2521209, at *8 (D.N.J. June 9, 2010) ("By simply stating that the plaintiff lives with an injury, illness or impairment without alleging that the impairment substantially limits a major life activity creates a defect in the Complaint.")). Despite the Court instructing her in the last Memorandum that one must allege a disability to state a plausible claim, Thomas failed to allege facts to indicate she qualifies as a disabled person under the ADA.

---

she was denied goods, services, facilities, privileges, advantages or accommodations due to discrimination based on her disability, which can include failure to reasonably accommodate her disability. *See Matheis v. CSL Plasma, Inc.*, 936 F.3d 171, 175 (3d Cir. 2019); *see also* 42 U.S.C. § 12182(a). Only injunctive relief is available to a private plaintiff suing under Title III of the ADA, meaning monetary relief is not available. 42 U.S.C. § 12188(a); *Bowers v. Nat'l Collegiate Athletic Ass'n*, 346 F.3d 402, 433 (3d Cir. 2003) ("Title III defendants cannot be liable for money damages.").

Likewise, she has not alleged that she is a member of a protected class under the FHA, or that she is an individual with disabilities pursuant to the FHAA. Like under the ADA, "[u]nder the FHAA, 'handicap' means 'a physical or mental impairment which substantially limits one or more of [a] person's major life activities.'" *431 E. Palisade Ave. Real Estate, LLC v. City of Englewood*, 977 F.3d 277, 284 (3d Cir. 2020) (quoting 42 U.S.C. § 3602(h)(1)). While there are references within Thomas's exhibits to her mental health challenges, she has not identified any mental health diagnoses in her pleadings. And she cannot rely solely on her exhibits to state the elements of her claim. *Est. of Egenious Coles v. Zucker, Goldberg & Ackerman*, 658 F. App'x 108, 111 (3d Cir. 2016) ("[W]e cannot fault the District Court for failing to intuit the necessary factual allegations from one of the many exhibits appended to the complaint. Judges are not like pigs, hunting for truffles buried in the record." (citations and quotations omitted)); *see also Bressi v. Northumberland Cnty., Child. & Youth Servs.*, No. 23-2156, 2023 WL 8866573, at *2 (3d Cir. Dec. 22, 2023) ("[A] District Court is not obligated to discern claims from exhibits attached to a complaint."). The Second Amended Complaint lacks facts that would suggest that Defendants discriminated against her on the basis of race, color, religion, sex, familial status, national origin, or disability. Without these basic elements, Thomas's claims under the FHA and FHAA must be dismissed.

**C. State Law Claims**

Because her federal claims will be dismissed, the Court will not exercise supplemental jurisdiction under 28 U.S.C. § 1367(c) over Thomas's remaining claims brought under state law.[11] Accordingly, the only independent basis for jurisdiction over any such claims is 28

[11] Thomas asserted a claim under the Emergency Housing Protection Act. (SAC at 3.) The Court understands Thomas to assert a state tort claim for assault and battery against her former roommate, Lomax. (ECF No. 44 at 6.)

U.S.C. § 1332(a), which grants a district court jurisdiction over a case in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." Section 1332(a) requires "'complete diversity between all plaintiffs and all defendants,' even though only minimal diversity is constitutionally required. This means that, unless there is some other basis for jurisdiction, 'no plaintiff [may] be a citizen of the same state as any defendant.'" *Lincoln Benefit Life Co.,* 800 F.3d at 104 (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) and *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010) (internal footnotes omitted)). The plaintiff has the burden of pleading the existence of the court's jurisdiction, *see* Fed. R. Civ. P. 8, and 'in a diversity action, the plaintiff must state all parties' citizenships such that the existence of complete diversity can be confirmed." *Craven v. Leach*, 647 F. App'x 72, 75 (3d Cir. 2016) (quoting *Chem. Leaman Tank Lines, Inc. v. Aetna Cas. & Sur. Co.,* 177 F.3d 210, 222 n.13 (3d Cir. 1999)).

Thomas has not met her burden of pleading the parties' citizenship. She asserts she is a citizen of Pennsylvania and resides in Philadelphia. (*See* SAC at 2.) She provides Philadelphia, Pennsylvania, addresses for all Defendants named in the Second Amended Complaint and names the City of Philadelphia. (*Id*. at 2-3.) Because it appears that at least one—and likely all—Defendants are citizens of Pennsylvania, diversity jurisdiction does not exist over any state law claims. Accordingly, all state law claims will be dismissed without prejudice for lack of subject matter jurisdiction.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Thomas's "Motion for Leave to File a Supplemental Pleading" (ECF No. 44) in part and deny it in part. The Court will dismiss Thomas's Second Amended Complaint. The federal claims will be dismissed with prejudice for

failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). The claims asserted under state law will be dismissed without prejudice for lack of subject matter jurisdiction. The Court concludes that further amendment of Thomas's claims would be futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002) (stating that district courts should dismiss complaints on statutory screening with leave to amend "unless amendment would be inequitable or futile"); *see also Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (amendment by *pro se* litigant would be futile when litigant "already had two chances to tell his story"). The Request for a Temporary Restraining Order (ECF No. 44) will be denied as moot.

An appropriate Order follows dismissing this case.

**BY THE COURT:**

________________________________

**MIA ROBERTS PEREZ, J.**